Thank you for the time today. I represent Brent Nelson and Bernard Nelson on the matter involving four units along Lake Omo Road in Billings, Montana, that the Secretary of Housing, Urban Development has determined violate the Fair Housing Act. The problems all began here in the Federal Register in 1991 when HUD said the guidelines are not mandatory. Additionally, the guidelines do not prescribe specific requirements which must be met and which, if not met, would constitute unlawful discrimination under the Fair Housing Amendment. And then we've got quite a litany of words following that. The first Administrative Law Judge, Judge Andrade, held correctly in our view that when the government rolls in and all it proves is a violation of a non-mandatory guideline, it has done nothing to advance its case. Well, Counsel, don't you misstate it a little bit? The particular guidelines you talk about may not be mandatory, but there's an alternative. You either follow that or you follow the local zoning rules, which are mandatory. We did that. Well, I don't think that's what the record shows, is it? At least insofar as the approved plans were concerned, that called for access in the front units in accordance with the local code. Your client didn't build it that way. He had the people with wheelchairs, for example, would have had to come around the back and go to a common patio. I didn't anticipate that, Your Honor. We have all the necessary approvals from the local government. I have the approvals, but my understanding is you didn't build the units in accordance with the approvals that you got. Isn't that correct? We did not build the units. In other words, you had a set of plans that were approved, but you didn't build them in accordance with the plans. I didn't anticipate that, but my recollection is that we had a set of plans that had preliminary approval, and they were by an engineer at CTA. The final checkoff, after negotiations between Brent Nelson and the local people that required an accessible route, that the local codes have been met. The reason it's not an issue, in my mind, is that the federal register and regulations say being accessible pursuant to local building codes is irrelevant. Mr. Parker, the second administrative law judge found that, and I think our case law speaks to this, that where a builder is found to have violated these aspirational guidelines, that the builder nonetheless still has to demonstrate that it met some accessibility provisions. I'm not sure what else you would look to. Maybe it is the local building code, but doesn't the builder have to show in compliance with the Fair Housing Act that he has completed an accessible building before the building can be said to be in compliance? Well, with all due respect, Your Honor, you've asked two different questions. All right. Maybe you can take them one at a time. I'll take the first one first. The first one says that there is some lower court law here and there in opinions that were never final. They were always orders on summary judgment, then the case disappears into a settlement. So no one has really reflected, as a matter of final judgment, on the issue of whether or not the courts should create a common law obligation in contravention of the guidelines themselves for an objective standard to be taken off the wall, proven with an expert, or codified by some national association. And, yes, I met those objective standards. And Judge Andretti's opinion is so good on that. He says that's what HUD wants, but it doesn't have any code that says that. It doesn't say that in the Federal Register. And it's contrary to the statutory intent if one reads the statute honestly. The second part is more aligned with what is in the Federal Register. One could maybe tease out of the Federal Register and the codes a requirement that shifts the burden of proving a violation to the respondent to suggest he hasn't. The government establishes a prima facie case by looking to the guidelines and saying this building is not accessible. What's wrong with shifting the burden of proof to the builder to say, well, we may not meet those particular guidelines, but here's why the building is generally accessible to the disabled in compliance with the statutory command in the Fair Housing Act? Well, there's nothing wrong with that. I think Congress could easily pass such a law. And I think if the HUD wanted to pass that regulation, they should get about it. But this is not the place to do that. Congress passed the law in the Fair Housing Act and said the statutory standard is that the building must be generally accessible to the handicapped. Yes. The government brings an enforcement action saying this building is not in compliance with that statutory standard and here's our theory as to why that is not so. Yes. What's wrong as a matter of law with shifting the burden to the builder to show that it is generally accessible? Well, if this were a congressional committee or if I were before the agency on a regulatory hearing, I might not have the same argument. But in this case, the judges of the Ninth Circuit should not make up that rule when it is contrary to the law. It's not the judges where there is an absence of proof. It's like in an employment discrimination case. When we're applying the McDonnell-Douglas factors to show a prima facie case of discrimination and then the employer has to show that there was a reason for the discharge and then the burden shifts back to the complaining plaintiff to show that the explanation offered is a pretext for some discrimination. Here, the government has made out a prima facie case of a violation by pointing to the guidelines. And according to the administrative lodges, the builder stands mute and basically offers nothing by way of a defense. I could not disagree more with the government making a prima facie case. The government could have said in order to make the – they could have set safe harbors. These were safe harbors. These weren't suggestions. They were safe harbors. They could have said if you have a 1,000-foot-wide door, we will say as a matter of law that's a safe harbor. And if your door is 1,000 feet wide, you've rolled into your safe harbor. If the government would then say, hey, your door is 990 foot wide, we now have a prima facie case, that would be ridiculous. There is nothing in the basis of the guidelines themselves that suggests there's a prima facie case to be made. And if there were – if there was, this is a prima facie case, you better do this or come in with your own guidelines than say so. They didn't. And plus, a prima facie case doesn't mean you win. No. It means that the finder of fact could, if the finder wants to, find in your favor. And that – but that's what happened here because of the fact that your client didn't offer any explanation to justify its accessibility. It offered enough for Judge Andretti. Well, but the problem is the – it didn't offer enough for the secretary. You can't offer enough for the – you can't offer enough for the secretary. The secretary's position is that this is the law. Was the architect a party to this in the original? The secretary has never been a party. No, the architect. The architect. Yes, the architect. Drew plans and were approved locally, right? Drew plans, approved locally, every stamp you need. And were in compliance with HUD regulations. We thought. And then there was the settlement, right? And the architect isn't around anymore. No, and I tried to plead him in and HUD told me I couldn't do it. They said there's no cross-claim in this business. You're left holding the bag. So you have – now, if this judgment is sustained, do you have a cause of action over against your architect? I don't know. Have you filed? No. Have you asked him? No. You made a claim against his insurance company? No. Have you – did he enter a settlement with the government? Yes. And you said he was not a party to this. They were originally. What in the world is going on? They were let off the hook for $2,500. I understand that, but I'm trying to figure out what's going on. Do you still have a cause of action against him? No, because we don't think they did anything wrong. Well, if we uphold the secretary's result, you'll find out you did something wrong. I guess we will. Did you have a cause of action over against the architect? We might. Or the authorities that issued the building permit in Montana? We might. My clients, by their nature, do not like to sue people. I can tell you that. I've represented them for a long time. I don't think they've ever made a – I have one other question, and it's in the nature of the relief that the government is giving to the people complaining about this. What if you just put an iron railing fence up there between those two condominiums, maybe cost you $500 or so, instead of tearing it all out and starting all over? Would it work? An iron fence where? Just between – it would segregate the traffic into those two condominium entrances in the front. Oh, we could. In other words, you couldn't get in the back door? No, you just have separate steps for each unit. We do. No, you don't. Oh, you mean that one thing? Oh, we could do that. We could make separate steps. It would be inconvenient. I'm not telling you to tear it all out and start all over. Yeah? Because I understand the relief. I mean, the administrative relief was just weird. You're telling me. I'm asking you. You move people into a motel room at $150 a night. Mr. Parker, if I could – I started off with this question, and you denied this, but I'm just going to cite you to pieces of the record here. What the record shows was that the plan check indicated that there were items that denied accessibility. The city said it wouldn't approve the plans until that was corrected. The architects made corrections to the plan to satisfy the city. The building permits were issued in July of 2002, and the garage permit in September 2002. At that point, Brent Nilsen constructed the property based upon the approved plan. Except that he installed carports instead of garages, built a sidewalk flush to the parking lot instead of installing curbs and ramps, did not initially include designated disabled parking, and changed the layout of the parking lot and the ingress and egress routes. In short, he didn't follow the plans. This is really a pretty simple matter, isn't it? No, because we never asserted as a defense following the local guidelines would be a defense. And HUD takes that position, believe me, because I can go back and prove that we are accessible under local law. Because taking the curb out made it accessible. Taking the curb out made it accessible. On the ground right now, it is more accessible than the plans. Taking the curb out, you can get right out of the driveway onto the sidewalk. You can go all the way around to one side of the building. That was done after the intervener made the complaint, though, right? No. The intervener, there is some dispute in the record, the intervener actually took the sidewalk, and the sidewalk itself has not been changed an iota, except we put a railing in, I think. Also, in my view, just to add a few more things, this court should just affirm Judge Andreotti's decision because the Secretary didn't get the work done in 30 days. But our court has already ruled on that and found that it was not a final order and that the Secretary's action superseded it. That's done. That's the law of the case. It's over. I disagree with the application of the law of the case, Doctor, and I put that in my brief. The second thing is that no one, the Fair Housing, the people that own the building aren't before the court. That was LLC, owns the actual building. And Fair Housing's mission is not frustrated by lack of access. They do not have Article III standing to seek any remedial relief other than money. Even under the Marin case? Any case. They do not have a – their mission is not frustrated. They never sought relief of getting access. Have you read Fair Housing of Marin v. Coombs? Fair Housing of Marin v. Coombs had a tester. What does that have to do with it? You weren't talking about standing. But then there was someone that was aggrieved in a manner other than money. That case held that a community fair housing organization has direct standing to sue where it shows a drain on its resources from both a diversion of resources and frustration of its mission. But there was an initial violation, and that is an adjudication that it's an aggrieved party, aggrieved by a violation. It's not an adjudication that there was a – the violation was through a tester. You still have to have a violation. Before you can say, I'm aggrieved by this violation. The violation is the violation under that provision of the statute that talks about the design and construction. That's what renders the original landowner, the architect, and the builder liable under the Fair Housing Act. Isn't that right? No. Why not? Because you still – you have to crawl back to this 3604. Yeah, but 3604, what is it, C? Yeah, you still have to crawl back through. That defines what discrimination is, but you have to go back to – it's a discrimination, again, a renter or a person. It's not just – Well, counsel, I'm looking at the statute. 22 U.S.C. Section 3604.3. Let's see. I guess it's F3C. Yes. It talks about a failure to design and construct the dwelling in such manner that it basically complies. It is an act of discrimination. Right. Okay. Against whom? Against a renter, a person – against a renter or a buyer? Well, it would have to be, would it not, as against any future users of the building, whether they're owners or renters. Congress is essentially trying to impose liability on those who design and construct in order to get them to create a building that complies with the accessibility requirements of the Fair Housing Act. And, indeed, the Garcia case specifically says that you don't require a person to be discriminated against in order to have a violation under the failure to design and construct. That in and of itself constitutes a discriminatory act. Do you disagree with that reading of Garcia? I do not have Garcia before me. Garcia was the in-bank opinion that we issued, wasn't it, that talked about whether or not there's a statute of limitations that cuts off claims against the architect, the original landowner, and the builder if you wait too long to bring them. That was a 2007 case? Yes. Okay. I have read Garcia. I read Garcia because it was, I believe – I don't know, it may have come out after – but I read that – I've studied that, but only on the statute of limitations issue because once I ran into the fact that it was completely time-barred, I didn't study it any further. I have to confess. All right. Counsel, your time has expired. Let's hear from Mr. Fowler. There are two findings that provide abundant support for the Secretary's ruling that – Counsel, just for the record, you should probably state your name. Sorry, I thought you had already said it. My name is Nathaniel Pollack, and I represent the Secretary of HUD in this case. Two findings provide abundant support for the Secretary's ruling that Nelson's property violates the design and construction requirements of the Fair Housing Act. Number one, the Secretary found that many features of Nelson's apartment building are not accessible to and usable by persons with disabilities. And number two, that the property does not comply with any recognized accessibility standard. Both findings are supported by substantial evidence. Indeed, they're based on unrebutted expert testimony. Now, the Secretary also applied the correct legal framework to the Nelson's admitted failure to follow HUD's Fair Housing Accessibility Guidelines. Does the government take the position that compliance with the – I guess it would be the building's building code is not compliance with the Fair Housing Act? That issue has never come up in this case, as far as I'm aware. Well, the city did issue occupancy permits. That's right. And I think that Judge Smith is correct that the city's plans were not completely followed. However, as the opposing counsel stated, that was never argued as a defense. And so whether that standard is a comparable alternative standard, objective standard, just wasn't a question. There was a partial settlement of this case, and there were other parties involved that are not here on the appeal. The architects you're referring to. Pardon? The architect. Yeah. That's correct. And the claimant, the original people that investigated the property and made the complaint to HUD, they apparently got some money out of this. They haven't received – they did get damages in the remedial order, in HUD's remedial order, a small amount of damages. They got some money in settlement, too, didn't they? No, they haven't settled. Montana Fair Housing has not settled. All right. So who paid the – as we understand the record, the architect paid $2,500, Mr. Parker says, to somebody. Who? HUD? I'm sorry. Montana Fair Housing settled – partially settled with the architect. They still have – so then the remedial order deducted that settlement from their damages when it went back to the ALJ. I'm sorry. That was a misleading answer to your question. I didn't fully understand it. So, yes, there is a settlement between those two parties. Are those parties dismissed now? Are they out of this? Montana Fair Housing is not because it still has an award of damages from the Nelsons, which was – so what happened in this case is there was an initial ALJ decision that dismissed the case. That was overturned by the secretary. Then the secretary remanded the case for damages. But if the architect was Nelson's agent and the architect settled, didn't that settle on behalf of Nelson, too, with Fair Housing? No. I think that Nelsons are liable as owners as well. And I think that there's good authority. Respectfully, I don't think – Partial settlement? In essence, MHA brought claims against the architect, the landowner, and the developer initially, correct? Correct. And you're telling us now that they have entered into a settlement with the architects for $2,500, but they're still pursuing their claims against the remaining parties? Is that right? That is correct, yes. Okay. That Nelsons – they're still pursuing their claims against Nelsons. So the answer to Judge Beezer's question is that that partial settlement did not release their claims against the non-settling party. That is correct. To get to the legal framework that the secretary used that is the correct legal framework, the secretary held that noncompliance with the guidelines triggers a requirement that the Nelsons demonstrate compliance with a comparable measure of accessibility. This is just what the guidelines themselves require. They say – What would that be here? Give us an example of what a comparable measure of accessibility would be. Well, there are a lot of recognized measures of accessibility. There's the ANSI standard that's cited in the Act itself. There's also other standards like the ICC code requirements for housing accessibility. There's the International Building Code. It may in some cases be that there are local standards that would be objective standards that would result in compliance. I get the problem in this case is that the Nelsons didn't comply with any recognized accessibility standard. That's exactly right, and that's a finding in this case. The guidelines themselves require – now, they say they're not mandatory, and that's sort of the hook on which the Nelsons hang their argument, but they say in the very next sentence that builders and developers may choose to depart from these guidelines and seek alternate ways to demonstrate that they have met the requirements of the Fair Housing Act. Clearly anecdotal evidence that a specific individual accessed a portion of a property does not demonstrate compliance with the Act. The Act requires covered dwellings to be readily accessible and usable by disabled individuals in general, and the way to measure that is to ensure that the property is compliant with some objective standards. Let me ask you an implementation question that may have some bearing in this case. If my understanding of Garcia is correct, that discrimination occurs at the design phase alone by an, in quotes, failure to design and construct, that that is a discriminatory housing practice, if that occurred and later on the Nelsons took some remedial action that brought them in compliance with some acknowledged accessibility standard, would that satisfy the claim, or would it still be out there? I think that, well, if it was currently in compliance, you're saying. Right, in other words – So there would be no retrofitting required. At the design phase, they broke the law. They came along and they did everything that was necessary to bring it into compliance. Would that cure the discrimination caused at the design phase? In this case, all that you would have then would be damages to any aggrieved person. Based upon the design failure. Right, brought about by the design failure. If you could show that somebody was actually denied access or that there was, like in this case, a fair housing organization that diverted resources because of the initial failure, there might be some damages, but there would be no – It's HUD's position that the community organization, that if there was a failure at the design phase that was remediated immediately before anybody ever entered the property, in the actual construction phase, that this housing group would still have a claim against the owners and architect for improperly designing it. I can't imagine that if it was remediated immediately, that their diversion of resources and frustration would be very extensive at all. But to the extent that there was – The Marin case is really a tenuous argument from my perspective, but that's our law. If they took two hours of someone's time to look at the design and that money was not used on some instructive work that they might otherwise do, then arguably they would have suffered similar kinds of damages. So I gather that HUD's perspective would be that, in fact, they could sue and could collect, even though it was remediated on the ground, in my example, before anybody could possibly enter the property. I think that's a correct reading of Marin. I would point out that, in this case, there was many, many, many hours of – I understand that didn't apply in this case. I'm just trying to understand your – But, yeah, I think that that is a correct reading of this Court's precedent on that issue. Mr. Pollack, are you asking us then to give something akin to Skidmore deference to these non-mandatory guidelines? No. I think that the guidelines – we're not saying that they're mandatory. The guidelines state that they're not mandatory. Right. We're not arguing that they are. But the Secretary has then promulgated – I misspoke. I should have asked with regard to the regulation, because the regulation creates this burden-shifting scheme, does it not? The guidelines themselves, what I just quoted to you, comes in the very next sentence after the guidelines say they're not mandatory. Then it says what that means. And what that means is, right, the sort of the burden-shifting, then you have to demonstrate compliance by some other means. And is that something to which HUD's position is we should afford Skidmore deference? Absolutely. This is an agency's interpretation of its own guidelines. And I will point out that the argument is not – Nelson's argument is their interpretation of the guidelines. In other words, they're hanging their hat on the guidelines' own statement that it's not mandatory. We're interpreting the guidelines, you know, they are not mandatory, but that means something more than just we can just sit back and not do anything. And then that somehow satisfies the burden under the Fair Housing Act. I also just want to point out that the Judge Andretti's decision is not the agency's decision in this case, and this Court should give no deference to it. Well, I assume you would agree with the question that was posed to Mr. Parker, does the law of the case doctrine apply? Absolutely. And that our prior panel in dismissing that appeal made that determination. If this Court has any questions, otherwise I'll rely on the brief for the remainder of the issues. Thank you. Very well. Then the case just argued is submitted.
judges: Beezer, Tallman, Smith